Good morning, Your Honor. May it please the Court, I'm Anne Murphy, and I'm representing the Federal Appellants, and I am sharing time with Mr. Belcourt, who represents the State of Nevada, and I'm sure he's very relieved that he's got more to go on than my word that I promised I would not eat his time. Don't start her time yet, please, because I want to thank you. Because we've shared the time that the Federal Appellants will get 10 minutes and the State Appellants will get 5. Okay, but how does that, but what's the rebuttal? I would like to reserve 2 minutes for rebuttal, please. Okay, and then, so just so that you understand, your full time is 5, and if you want to save any time when you come to the podium, let me know on the rebuttal, okay? All right, because I'm not going to turn this into a 4-hour argument, so I'm, okay. Now you can start the time. Thank you. May it please the Court, as I say, I'm Anne Murphy from the Justice Department, and I'm here to represent the Department of the Treasury, which is named as a party in the case, and also two individual defendants, Robert Abbey and Helene Hankins. And I'm also representing the Bureau of Land Management, which, although it's not a party, has in fact been enjoined by the district court. Your Honor, we did appear in the district court proceedings. BLM? No. I mean, it was very difficult, because only Treasury was a party, and there wasn't even a motion for an injunction until the district court advised plaintiff that he ought to move for an injunction, and the district court told plaintiff that he had the wrong party in Treasury, that he needed to enjoin BLM, but then nothing really happened until the injunctive order issued, so. The order issued against BLM. Correct. You are now representing BLM? Well, I think BLM is entitled to representation in the Court of Appeals. What happened was it just — But you weren't — were you the counsel, BLM? No, Mr. Addington, who's also here. Oh, okay. So, but, you know, basically, you know, as Federal government lawyers, you know, we're entitled to, I think, represent the agency's position in this Court. And obviously, part of the agency's position is that it's not a party to the case, and it was enjoined even though the district court didn't set forth the reasons for enjoining BLM in a case to which Treasury was a party. Well, there's a couple of — I think there's a couple of ways to look at this case in terms of there's not a lot in the record explaining why, what the district court's reasoning was. And so that, you know, arguably, you know, if the court were to say that we're deficient, then to send it back and say you didn't state your reasons. But then I know that there have been a number of substantive legal issues that have been raised that if the government's position is correct would resolve the case. So how are you proposing that this court, you know, how do you want this court to resolve it? Well, Your Honor, I understand that often in a preliminary issue like this you would send it back for a district court to make further findings. But here we would ask that the injunction be vacated, because to the extent that it's possible to discern the court's reasoning, the court said that the injunction should be issued on the basis that Mr. Yowell didn't know that his cattle were going to be impounded and that he didn't have an opportunity to be heard. And that's manifestly untrue factually. So, I mean, your position is that he can't succeed on the merits and there's issues such as qualified immunity and things along those lines, right, and Bevin's arguments. It's, I mean, just to take my various clients and why they should succeed at this point, the injunction against BLM, apart from the lack of findings of fact, conclusions of law, does seem to have been based on this idea that the cattle were seized without notice. We know that's not true, and there was no legal analysis. But if there had been, as our brief explained, no injunction was warranted. So we would ask that the injunction be dissolved or vacated. With respect to the other defendants, with the individual defendants, we're asserting qualified immunity. And I don't think I need to go over what we said in our brief. There are a number of reasons why these defendants are entitled to qualified immunity. Plus, even backing up the individual. The individuals. We will get to the Department of Treasury and its interest in qualified immunity claim. But there's no allegation as to what the individuals did. There's no constitutional right was violated. And at a minimum, it's just impossible to frame a complaint based on these allegations of fact that would lead anyone to conclude that there is a clearly established law that our individual defendants violated. Can I ask a question with respect to our appellate jurisdiction? Yes. We would have jurisdiction, I take it, for an appeal from the injunction. Correct. And I take it we would have some jurisdiction with respect to the immunity. Correct. Determinations. If you're entitled to immunity, then we can reach that. Correct. Does that take care of everything that you want us to hold? Yes, provided that we're allowed to raise qualified immunity for Treasury 2. Okay. Which I think we have to be able to do, given that the court, the district court, put us in this horrible bind. It refused to, it just refused to follow these controlling cases from this course in the Supreme Court, saying that the Treasury Department is no proper defendant under Bivens law section 1983. So if we have to be here. Well, that's my problem. I'm just, I was struggling a little with how we have jurisdiction to review the judgment against Treasury. I completely understand that, Your Honor. And I think what would, the path that we took was we moved, we asserted qualified immunity on Treasury's behalf on, you know, because, you know, if it's here at all, it should be entitled to the immunity defense, even if Your Honors ultimately rule that there's no cause of action against it. But it seems no reason to keep Treasury in the action as an individual defendant. So you have a motion to dismiss, right? Correct. And so your motion to dismiss is sort of four reasons. There's no Bivens action against Federal officials acting to protect Federal lands. Then you've got a Bivens action cannot lie against Federal agencies. And then you're stating that Yowell fails to establish a violation of a clearly established Federal right. And then you're also claiming that his claims are time-barred under the statute of limitations. That's absolutely correct. I mean, all of the, there's a lot of things going on in this case, but primarily the issues asserted arise from a 2002 cattle impoundment, which has, you know, been litigated in various, for various times. So while it's not entirely clear that the statute of limitations is an issue in the qualified immunity appeal, as a background, if this Court wants to remind the case, there's a really important question as to why one would do that, because it's all going to be time-barred in the end. Again, I mean, the district court rejected that as well, but again on a very legally groundless theory that there was somehow continuing violations, which given that the alleged constitutional violations of failure to give notice in 2002 is simply not sustainable. So I don't really want to eat into Mr. Belcourt's time. If you have any questions? Okay. Well, I think anyway that you're down to, this then leaves you close to three minutes, well, two and a half minutes on rebuttal. So that seems like it makes sense for you. Okay. Thank you. Okay. So we're going to save, she's got two minutes and 42 seconds for rebuttal, and now we're going to put him on a five-minute clock. I'd like to reserve one minute for rebuttal. Okay. May it please the Court, Dennis Belcourt, Deputy Attorney General of the State of Nevada, representing the State Defendants Connell and Jernigan, who are retired employees from the Department of Agriculture of the State of Nevada. I'd like to start with an overview, and that is basically this case. It illustrates clearly how important the qualified immunity doctrine is to establish the right balance so public officers can do their jobs properly. Why is Nevada in the case? Pardon? Why is Nevada in the case? Nevada employees, these are my clients, former employees, provided brand inspection. Their brand inspection was to ascertain that these cattle that were being picked up by BLM were actually belonging to the party that got noticed, Mr. Yell, and there were other parties as well. So Nevada law provides for brand inspection as a requirement to move cattle across brand inspection districts or out of state, and that's why they're involved. Nevada law requires that its brand inspectors satisfy themselves based on the evidence that the cattle either belong to the party that's asking for the inspection or the party that's asking for the inspection has the right to possess those cattle. In this case, it was clearly a right to possess because the brand inspectors determined that the cattle that belonged to Mr. Yell were indeed Mr. Yell's cattle and the brand inspection certificate, which was for transportation only and not to change title of the cattle. It was issued with him as the owner. You haven't been enjoined from doing anything further? No, this is solely about qualified immunity. For damages? Damages, correct. So what's the significance, does the opinion from the Nevada Attorney General's Office have in assessing whether your clients complied with Nevada law? Well, the opinion that was, I think it's JER169-70, deals with whether the law was clearly established. It was actually the evidence, my two clients wanted to know whether they had to issue a brand inspection certificate and whether they could do so, and they were advised that if BLM follows its own regulations, that they're within their authority. I mean, the Nevada statute establishes that BLM has rightful possession to the cattle. So if BLM comes forward with the notice of intent to impound and the brand inspector looks at that, it can say, yes, you have the right to legal possession of these cattle. I mean, if there's nothing else out there that says this is absolutely wrong, they would issue that. Okay. I understand what you're arguing. So which is your better argument, qualified immunity or statute of limitations? Well, statute of limitations is absolutely clear. Our guys were, their involvement ended in May 24th, 2002. They're sued in 2011. That's absolutely clear, but I think qualified immunity is clear. And the fact is we didn't appeal on statute of limitations because we appealed only under the collateral order doctrine. If this case could be disposed of in statute of limitations by this court, that would be satisfactory to us as well. Okay. There don't appear to be any. There's a question about whether we would have jurisdiction to reach that. Yeah, there's a question. I mean, that's why we chose a clearly jurisdictional approved method of appealing. All right. Do you want to save your minute and ten seconds then? Okay. Good morning. Good morning. Are you splitting your time? No, I'm not. Okay. So it's all yours. Yes. Okay. My name is Julie Cavanaugh-Bell. With me is co-counsel John Stevenson and our client, Mr. Raymond Yowell, plaintiff of Pele. Thank you. I want to start off, Your Honor, with a quote from Judge Jones' comments at the hearing on the record in this case on February 12th where he opened up stating that it looks like to me there was a major injustice done to Mr. Yowell. That's the issue here. Well, it does. The judge does appear to be sympathetic to your client. Yes. But the judge has to satisfy procedural requirements and say why he did what he did. So you've got that issue. And it's a pretty sparse record in terms of what you're required to do in terms of the analysis on an injunction. But I want to move on and I want to say how do you get around Wilkie v. Robbins, which holds that no Bivens action may lie against federal officers for their official lawful actions to protect federal lands, including enforcing grazing permits? Well, Your Honor, we would argue, first of all, that these are not public lands. This is one of the major issues at stake in this case. In 1941, the proclamation that established the South Fork Indian Reservation included those lands, the grazing areas adjacent to or connected to the reservation. Everyone understood that. Even in the BLM's declaration they filed with their motion for reconsideration, Mr. Oak or Okie admitted that these were historical grazing areas that had been used in connection with the reservation lands. It's always been a statement by Mr. Yow. And it's one of the major concerns in this case is that they've never had a hearing on that issue. So it's our assertion that these are not public lands. And CFR 43.00-5 actually accepts out lands held in the benefit or for the benefit of Indians from a public lands definition. So that's the first basis in terms of accepting out Wilkie is because these aren't public lands in the first place. And we don't believe that the actions taken were lawful. And we believe that any reasonable officer in the situation of either the BLM officers or the State officials should have known that. If you take a look. What's your authority for that? Well, if you take a look at the declarations submitted. You need cases that would put them clearly on notice of a clearly established right. Well, the clearly established right, Your Honor, is a right to due process and a right to the property. And Mr. Yow had those rights. And this property was deprived from him without any hearing. And the Attorney General's Office that the State relies on in terms of the reasonableness of their decision actually doesn't even apply to Mr. Yow. It applies to two other individuals in a county about 500 miles away from Elko County, Esmeralda County. And so in their declarations, they state that they requested advice from the Nevada Office of the Attorney General and was provided with an informal opinion. However, the record shows that J.E.R. 0169-171, which is that attorney – which apparently is the Attorney General's opinion, was issued almost a year prior to the impoundment and was with respect to Jack Vogt and Ben Colvin, completely unrelated to Mr. Yow. It doesn't involve any tribal lands. There's no assertion of reservation issues. And it actually goes through a piece-by-piece analysis of how they were properly noticed, which we don't have in the record with respect to Mr. Yow. And so there's clearly a disputed fact. And this is what the district court was looking at when he denied the State's motion to dismiss, and also when he – and that's another issue we have here. I recognize we don't have a lot to go on in terms of an analysis in the record, but pursuant to – But you have to do the analysis for an injunction. There's got to be an analysis for a likelihood to succeed. And where do we find that in the record? Correct, Your Honor. And I would submit that this may be a perfect case to remand back down for specifications in the injunction. In his order granting the injunction, he does refer back to his original order, where he did go through a fairly lengthy recitation of the background facts. Whether or not that's the functional equivalent of a finding of fact in terms of the basis for the injunction, that would be for the court to decide. But I would submit that, at a minimum, that it goes back for specification if that's going to be necessary. And given the equities in the injunction, I mean that Mr. Yow was having a portion of his Social Security payments taken every month. You know, for an individual on a fixed income, that's huge. Only if it's only $140 a month, that could be his gas allowance for that month, or utility bills. So in terms of the Federal Government not having, not collecting that every month, I think the equities would weigh in favor of keeping the injunction in place and directing the district court to provide the Ninth Circuit with more specificity. Are you arguing that he never had any notice that he was supposed to pay the grazing fees? There is evidence that he received some notice, Your Honor, but whether or not he equates to due process requirements and pre-deprivation, and whether or not the regulations they used in terms of regulations that apply to public lands and management on public lands are all questions that have not been decided by the district court. Hadn't you litigated, didn't the Dan's case decide that the grazing rights issue was, didn't it decide the grazing rights issue? The Dan case actually ended up in the U.S. Supreme Court finding that the Indian Claims Commission, the payment issue barred any further litigation. And that issue is distinctive from the issue at stake here because we're asserting the proclamation that established the reservation, not the land rights boundaries under the Treaty of Ruby Valley. Mr. Yell is asserting this specific to the proclamation that was authorized by the Indian Reorganization Act, and then pursuant to the Department of Interior by their own proclamation. And now it appears they're turned around 40 years later and have decided that they're not going to recognize those lands connected to the reservation as it was set forth in that proclamation. So what's your authority for seeking damages from a Federal agency rather than Federal individual officers? Well, the Federal agency, Your Honor, we, in this, you understand this case was filed pro se, a pro se litigant. And we have filed a second amended complaint, which I think also raises some interesting procedural issues for the Court, as the district court did grant our leave to file that second amended complaint, which is another issue that we raised briefly, is that are these arguments even ripe for review at this point? Are they moot? Since there's another complaint that's operative now. And those are some of the issues with the Bivens, especially, is that that may be a claim that's not in the new complaint. Those are issues that are being reviewed. I have problems with one of the arguments that you're making that has to do with whether the defendants had discretion under Nevada law. I'm struggling with the fact of how you can argue that the State defendants lack discretion under Nevada law when you also say, out of the other side of your mouth, that they could have done more to stop the cattle sale. So that, to me, right there, says it was a discretionary act. Well, and, Your Honor, the immunity, as I read the case law, the immunity would only apply if that discretionary act was not so unreasonable that any other officer would have known it was an violation. Well, but you're arguing it's ministerial. You're saying it's not discretionary because discretionary is what is protected, right? It's protected to the point that a reasonable officer wouldn't see it as a violation. But the conduct that they engaged in was not discretionary. Were you arguing that it was ministerial, that it wasn't discretionary? We're arguing that the NRS requires that they prove, that they show substantive evidence as to why the legally titled owner is not there to sign that brand inspection. But they're entitled to qualified immunity if it's a discretionary act. So that's what I'm seeing you, that you're arguing that it's ministerial and that's why they're not entitled to qualified immunity. But then you're saying in other parts of it, well, they could have done more. So that right there tells me if you think they could have done more, then it clearly was a discretionary act. Well, if it was a discretionary act, though, Your Honor, and it was done in conspiracy or conspiring with the BLM and was done with deliberate indifference, we would beg to differ and claim that it was done with deliberate indifference. That immunity still would not apply even to that discretionary act. And especially with the Attorney General's office, it was an opinion that was attached. It clearly reflects that they did not go out and seek an opinion with respect to the notice that Mr. Yall was given. In fact, the declarations are full of hearsay. I was informed and believed. I received documentation. Where is it? What did the notice say? Who was Mr. Yall asked to contact? What process was he given to follow through? None of that was provided to the district court. Didn't he sue to stop that sale? Yes. And he actually sought an injunction on it, and it was dismissed. Everything has been dismissed on technicalities and procedural issues. But isn't that an opportunity to be heard if you can file a suit before they sell the cattle? Well, Your Honor, I wasn't involved in that litigation, but my understanding was that it was dismissed out on technicalities. I know that the BLM early on was interpreting the proclamation from the regional offices. Nobody was ever provided with how that proclamation was somehow changed. The language was changed with respect to the land connecting to the reservation. But, I mean, you have an opportunity to be heard if you can go into court and press the issue. If you lose, that doesn't mean you didn't have an opportunity to be heard. It just meant that you were wrong. Well, that was at the administrative level, Your Honor. And so I think that would be an issue that the district court and perhaps the district court in the silence on a lot of these issues. And I know Rule 52 allows the district court to deny motions under Rule 12 or Rule 56 without giving definite reasons. And perhaps the reason for that is to allow for some discovery in this matter. If there's questions of fact with respect to the reasonableness of the officer's actions, then that's something that would lead to further discovery to determine whether or not, in fact, that immunity should apply. And, I mean, with respect to the State's summary judgment motion, they filed summary judgment before our motion for summary judgment before there was ever any discovery at all. And looking at the facts in the light most favorable to Mr. Yowell, I think the district court was correct in stating that on the face of this, it looks like there was a violation. And until it's proven otherwise, it's going to stand in this case moving forward. So what specifically is the Federal right that was violated by the State defendants? The right to due process and the right to property. And what the defendants say that beyond issuing the brand inspection certificates they had no role in the impoundment or sale of Mr. Yowell's cattle or the BLM referral  story. Their actions, Your Honor, are what allowed the BLM to remove those animals. Their actions were what allowed to sell the animals. And another question of fact is raised because the Attorney General's opinion that they attach, that they claim they relied on for Mr. Yowell's transport of cattle, actually is an Attorney General's opinion with respect to the sale of cattle. So not only does it not apply to the specific individual and the notice requirements that were given to him and not these two individuals, but it actually ---- All right. So are you tying your violation then to the Nevada revised statutes? Yes. Because ---- But see, if you do that, that's still not a Federal right. We believe, though, that he had some rights to notice and the requirements that were set forth by NRS were set forth to protect his right to property under Federal law as well as the state constitution. Do you have a case that concludes that the procedures that you're talking about violate Federal law? Do you have a specific case you can point me to? The one case I have, Your Honor, that actually is, I think, leans towards, it's similar in terms of facts, kind of on the opposite side, but it's the Jones v. Freeman case of the Eighth Circuit that the Federal government relied on in their case. The distinction there is that there was judicial review allowed, which there's no evidence of that in this case. And also, they made a specific point of mentioning that the livestock involved in that impoundment, there was never an allegation that they were not on public lands. And here in this case, we have specific allegations, correspondence both from the tribe as well as from the individual tribal member, Mr. Yowell, directly to the BLM, as well as documentation demonstrating that there's a heavily disputed issue of fact and law with respect to whether or not those lands were public lands. And just tell me, am I correct that there is no court decision concluding that the Nevada revised statutes violate Federal law? Do you have any decision that concludes that? I do not, Your Honor. I do know that the Nevada revised statutes were later amended. I'm sort of, I'm kind of struggling at a loss to understand what the Nevada defendants were supposed to do. Well, Your Honor, we would argue that they were supposed to follow the NRS, and they were supposed to go out and get satisfactory evidence if they were going to sign, allow a brand inspection or a brand certificate to go forward without the legal owner. Nobody here disputes that Mr. Yowell was the legal owner. But then if that's what they were supposed to do, and that's the gravamen of what you're talking about regarding the state defendants, and there's no case, there's no court case saying that the Nevada, that doing that violates a Federal right, that, you know, then it's like I rest their case for qualified immunity. That's, I feel like we're talking past each other on qualified immunity. I mean, it is a tricky concept, but by the same concept, but by the same, but qualified immunity, someone can do something wrong, but if it doesn't, if there's not a Federal right and it doesn't follow, violate clearly established law, then they're entitled to qualified immunity by virtue of who they are. And so that's, that's part of the problem here. Well, there's a clearly established right, Your Honor, the right to property. The right to property and his cattle, and the right to have a hearing in terms of if he was going to be deprived of that property, and that's where the NRS comes in. They didn't take his cattle. They didn't take the cows. I, I, all they did was check to see if the cows were his by checking the brand. So I'm not understanding what the problem is. The only way the cows could be moved is if that brand inspection, that brand clearance was signed. And the only way they can be sold without the rightful owner is if the brand inspection signs off on that as well. And that's another question of fact in this case. So they should have done nothing? They should have done nothing. They should not have allowed those cows to be moved. There was no court order. There was no warrant to just have somebody else come in, whether they're a Federal agency or not, and remove cattle. All right. I think we understand your argument. We've gone into overtime. So unless either of my colleagues have additional questions, that would conclude your, your argument. Thank you. All right. Now I have two, two minutes and 42 seconds left for you. That's what I was looking at. I can cut it in, Your Honor. First of all, Mr. Yowell's entitled to his opinion, but there's a whole slew of cases from the Supreme Court and from this Court holding that these lands are public lands, these specific lands. We've cited them at page 33 of our brief. I do commend them to you. There just really is no dispute at this point that these are BLM-managed lands. And Mr. Yowell himself has brought, like, numerous lawsuits, all of which have also been BLM lands. So, you know, as I say, Mr. Yowell's entitled to his view, but from the point of view of the Federal BLM officials, they are entitled to regard controlling Supreme Court law as controlling Supreme Court law and to understand that they have the right to remove the cattle from the land. Counsel represented that the judge's, that judge's reasoning could be found in his original order. And I'd just like to say, when the judge said, oh, you should get an injunction against BLM for not giving you notice, there was no injunctive motion, so it can't possibly be findings that justify the injunction, because there wasn't one. But it was sort of a sua sponte suggestion. Right. And all he had, all that the Court had was the allegations of plaintiff's complaint. And the Court made it clear, I'm accepting these as true for purposes of ruling here. So that's no basis for actually upping and joining a Federal agency. The notion that these cases were dismissed on technicality, I mean, the technicality is, you know, a failure to respond. So I think Your Honor's absolutely right. All that due process requires is notice and opportunity to be heard. And if the litigant decides not to avail themselves of that opportunity, that's not a due process violation. So I think those are the main points. Do Your Honors have any? What the response they seem to be hanging their hat on is that the Federal violation is due process and then also taking property, deprivation of property. And your responses are the public lands and the opportunity to be heard. Right. I mean, and don't forget that we're here on an actual injunction that was actually issued, and to the extent that you can tell why it was issued, the district court did say I'm doing this because plaintiff, they seized the cattle without giving him a chance to be heard. And he didn't even know they were seizing the cattle. And we know that that's not true because he, you know, he filed his own suit to enjoin it. So, you know, much as you can kind of retrofit and invent things that the court could have found or, you know, the truth is that there's really no basis legally or factually for this injunction. Well, the injunction goes to what? To the taking the money out of the social service? The more you think about it, the harder it gets. Right. I mean, it seems to me there was a certain element in the district court's decision of their demanding a pound of flesh. But I think that's actually not true. I mean, really not true. I mean, one of the things that's clear from this record, especially the procedural thing, is it took BLM a long time to act. And the reason is they don't want to impound cattle. They don't want to. But the fact is that the public grazing lands will only support so many cattle. And so if you've got people who are actually paying the fees and it's not fair to them if you don't take action against unauthorized grazing. Well, I understand that. But so does the injunction go to the taking the money out of the social security check? Yes. The injunction, and we've complied with it. So BLM has, it's decertified the debt to Treasury. Because BLM tells Treasury, you know, we have to take this amount out. And Treasury really has no choice. It has to comply under this Federal statute. So they're not taking it out now. Correct. Because there's an injunction. And if we overturn the injunction, they'll take it out again. Correct. Yes. Yes. All right. We've taken you over. So we have one minute left for the, I think, State defendants. Thank you. Thank you. The counsel for the Mr. Yelm states that there's a question of factor. There may be questions of factor. They may want to do additional discovery. Now we're 11 years after the seizure. As to my clients, on the record, I think the Celtics' burden has been met. That, you know, the only basis for them being liable, my clients being liable, were if they're willfully blind to the risk to this Mr. Yelm's constitutional rights. Their affidavits, I think, are sufficient to establish on the record there isn't any. There wasn't anything supplied to the contrary from Mr. Yelm to say that this is why they're willfully blind or this is why they're deliberately indifferent. On the affidavit or the opinion of the Attorney General's Office, that did concern another matter. There was an oral discussion. I think the affidavit refers to a telephonic discussion. But that was referring to, you know, the criteria that the Department was advised to use in determining whether to issue a branch certificate, where there was a seizure. All right. That's all. The clock's sort of going in weird ways, but I know I've given you a minute. Thank you. Thank you. Okay. Thank you all for your argument. This matter will stand submitted. The Court is in recess until tomorrow at 9 a.m.
judges: Vance, Schroeder, Callahan